```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION
```

United States of America,           )
                                     )
            Plaintiff,                )
                                     )
      v.                             )    No. 09 CR 139
                                     )
Victor Erasmo Gramillo-Garcia,       )
                                     )
            Defendant.                )

## Memorandum Opinion

Non-citizen Victor Erasmo Gramillo-Garcia ("Gramillo") has pleaded guilty to an information charging him with being found in the United States, after once having been deported (in the current vernacular "removed"), without having obtained the consent of the United States Attorney General or the Secretary of the Department of Homeland Security to his re-entry into this country -- a crime that appears with some frequency on the calendars of this Court and its colleagues. Like many other aliens who confront guaranteed removal (once again) after having served whatever custodial sentences may be imposed on them, Gramillo seeks to obtain the same type of reduction in his sentence that like defendants receive in judicial districts that the Department of Justice ("DOJ") has designated for so-called "fast track" treatment.

Here are the required criteria for a district court's involvement in the fast-track prosecution program, as set out in Paragraph I of the definitive September 22, 2003 memorandum from

then Attorney General John Ashcroft to all United States Attorneys:

> In order to obtain Attorney General authorization to implement a "fast track" program, the United States Attorney must submit a proposal that demonstrates that:
>
>> (A): (1) the district confronts an exceptionally large number of a specific class of offenses within the district, and failure to handle such cases on an expedited or "fast-track" basis would significantly strain prosecutorial and judicial resources available in the district; or
>>
>> (2) the district confronts some other exceptional local circumstances with respect to a specific class that justifies expedited disposition of such cases;
>>
>> (B) declination of such cases in favor of state prosecution is either unavailable or clearly unwarranted;
>>
>> (C) the specific class of cases consists of ones that are highly repetitive and present substantially similar fact scenarios; and
>>
>> (D) the cases do not involve an offense that has been designated by the Attorney General as a "crime of violence." See 28 C.F.R. § 28.2 (listing offenses designated by the Attorney General as "crimes of violence" for purposes of the DNA collection provisions of the USA PATRIOT Act).
>
> These criteria will ensure that "fast-track" programs are implemented only when warranted.

And here are the minimum requirements for a defendant's plea agreement in order to obtain the benefit of fast-track treatment (Paragraph II.B of the same Ashcroft memorandum):

> B. Minimum requirements for "fast-track" plea agreement. The Defendant must enter into a written plea agreement that includes at least the following terms:

>    (1) The defendant agrees to a factual basis that accurately reflects his or her offense conduct;
>
>    (2) The defendant agrees not to file any of the motions described in Rule 12(b)(3), Fed.R.Crim.P.
>
>    (3) The defendant agrees to waive appeal; and
>
>    (4) The defendant agrees to waive the opportunity to challenge his or her conviction under 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel.

In this instance Gramillo has complied with all of the last-quoted requirements. Where he falls short in terms of the Ashcroft memorandum, however, is that this Northern District of Illinois is not among the judicial districts that have been favored with fast-track designations.

It is scarcely surprising that our Court of Appeals, like others around the country, has addressed this issue more than once. Indeed, the per curiam opinion in United States v. Galicia-Cardenas, 443 F.3d 553, 555 (7th Cir. 2006) went beyond that court's then-recent decision in United States v. Martinez-Martinez, 442 F.3d, 539 (7th Cir. 2006) by vacating a defendant's sentence and requiring re-sentencing "without a credit for Wisconsin's lack of a fast-track program." But both Martinez-Martinez and Galicia-Cardenas antedated the sea change in sentencing jurisprudence wrought by the contemporaneous decisions in United States v. Kimbrough, 128 S.Ct.558 (2007) and Gall v. United States, 128 S.Ct. 586 (2007) -- indeed, as our Court of Appeals has more recently observed in its unpublished opinion in

3

<u>United States v. Valadez-Martinez</u>, 295 Fed.App'x 832, 835 (7th Cir. 2008):

> The Supreme Court's decision in <u>Kimbrough v. United States</u>, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), has rekindled debate about whether the absence of a fast-track program can be a factor in the choice of sentence.

What is at issue of course is the application of one of the criteria that Congress has set out in 18 U.S.C. § 3553(a) ("Section 3553(a)"), the criteria that control sentencing courts in this post-<u>Booker</u> era now that the Sentencing Guidelines are advisory rather than mandatory in nature. Here is that Section 3553(a)(6) consideration that is part of the still-mandatory statutory criteria:

> the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

There is no question that the fast-track program creates <u>disparities</u>, so that the critical issue is whether those disparities are indeed <u>unwarranted</u>.

To this Court's surprise our Court of Appeals, like virtually every other Court of Appeals around the country, has not spoken directly to what would seem to be the most cogent argument that a defendant about to be sentenced in this district could advance: not the differences in inter-district treatment that are reasonably called for by the considerations spelled out in the Ashcroft memorandum, but rather the wholly arbitrary

4

extension of fast-track treatment to a number of judicial districts that do not begin to approach the requirements of that memorandum's Paragraph I (A). What justification can reasonably be asserted for the inclusion of a substantial number of the judicial districts embraced by the DOJ?

On that score, perhaps the most conspicuous among those inclusions are two districts embedded deep in this country's interior -- Nebraska and Utah -- but a number of the other districts included in DOJ's most recent authorization memorandum also appear to flunk the requirements of the Ashcroft memorandum. As this Court's colleague, Honorable Matthew Kennelly, said in <u>United States v. Medrano-Duran</u>, 386 F.Supp. 2d 943, 948 (N.D. Ill. 2005):

> If fast track programs were limited to districts that are swamped by illegal re-entry cases, a decent argument perhaps could be made that Medrano-Duran is not similarly situated to persons charged in those districts. But even though this may once have been the case, it is no longer. Based on the government's submission in this case, the Attorney General has approved early disposition programs in the Districts of Oregon, Idaho, Nebraska, and North Dakota, in which each Assistant United States Attorney, on average, handles only two or three illegal re-entry cases per year. And an early disposition program was also approved in the Western District of Washington, which has less than one illegal re-entry case per prosecutor per year -- 0.58 cases per prosecutor, to be exact, for the fiscal year 2003. *See* Govt. Supp. Resp. at 7 (citing data from *http://www.ussc.gov/ LINKTOJP.HTM).* It would be difficult to describe the illegal re-entry caseload in those districts as unduly burdensome, let alone overwhelming.

Just what goes on here? Nothing in the Government's Position Paper as to Sentencing Factors and Response to

5

Defendant's Sentencing Memorandum, filed in this case, even attempts to speak to what on its face appears to be a totally unprincipled pattern of inclusion and exclusion of judicial districts by the DOJ.

One Court of Appeals -- not our own -- has had occasion to address the concern shared by this Court in that respect. In the pre-Kimbrough case of United States v. Andújar-Arias, 507 F.3d 734, 742 (1st Cir. 2007) the Court of Appeals for the First Circuit, after discussing some of the highly suspect districts embraced in the fast-track program, still held (citing Martinez-Martinez from own Court of Appeals):

> We now join the other circuit courts and make that holding explicit. Because Congress has authorized fast-track programs with the understanding that such programs would create sentencing disparities, we find that such disparities are not unwarranted as a matter of law. Therefore, a sentence imposed without consideration of such disparities under § 3553(a) is not legally erroneous or, as defendant would put it, per se unreasonable. In passing the PROTECT Act, Congress determined that the benefits of maintaining high prosecution rates and relieving the case management burdens on many districts outweighed the costs of lower sentences. See, e.g., Martinez-Martnez, 442 F.3d at 542. As a court we are not in a position to second guess that determination.

But when Kimbrough (and Gall) then taught a new lesson in sentencing jurisprudence, an extraordinarily distinguished panel of that Court -- the opinion's author, Honorable Bruce Selya, Chief Judge Michael Boudin and former Chief Judge Juan Torruella[1]

---

[1] Judge Torruella had also been a member of the Andújar-Arias panel.

6

-- held in United States v. Rodriguez, 527 F.3d 221, 225:

> Shortly after this court decided Andujar-Arias, the Supreme Court decided Gall and Kimbrough. These decisions, announced on the same day, shed new light on the scope of a sentencing court's discretion under an advisory guidelines regime. Collectively, they called into question a number of our earlier decisions by emphasizing the breadth of a district court's discretion to deviate from a defendant's GSR based on the compendium of sentencing factors mentioned in 18 U.S.C. § 3553(a). See Gall, 128 S.Ct. at 596-97; Kimbrough, 128 S.Ct. at 570, 575-76. Concerned that this new jurisprudence might animate an exception to the law of the circuit doctrine and undermine the rationale for excluding any consideration of fast-track disparity, we asked the parties for supplemental briefs. After painstaking study, we are now persuaded that the gloss added by the Supreme Court militates in favor of a new approach -- an approach that requires, inter alia, abrogating our holding in Andújar-Arias. We elaborate below.

In the course of its thoughtful analysis, Judge Selya's opinion for the panel then observed (id. at 227):

> Like the crack/powder ratio, fast-track departure authority has been both blessed by Congress and openly criticized by the Sentencing Commission. See United States Sentencing Commission, Report to the Congress: Downward Departures from the Federal Sentencing Guidelines 66-67 (2003) (criticizing fast-track programs for creating a type of geographical disparity). Like the crack/powder ratio, the fast-track departure scheme does not "exemplify the [Sentencing] Commission's exercise of its characteristic institutional role." Kimbrough, 128 S.Ct. at 575. In other words, the Commission has "not take[n] account of empirical data and national experience" in formulating them. Id. (citations omitted). Thus, guidelines and policy statements embodying these judgments deserve less deference than the sentencing guidelines normally attract. See id.

In the end, as already stated, the First Circuit overturned Andújar-Arias, distinguishing the prosecutorial and judicial roles in these terms (id. at 230):

> While the decision to institute a fast-track program in a

7

particular judicial district is the Attorney General's, the
ultimate authority to grant a fast-track departure lies with
the sentencing court. See USSG § 5K3.1. The appellant is not
requesting that this court direct prosecutors to institute a
fast-track program in the District of Puerto Rico or to
offer him a fast-track plea. Rather, the appellant asks that
we gauge the impact of disparate sentencing practices in
crafting his sentence. Because this is an unquestionably
judicial function, we discern no separation of powers
concerns here.[2]

Judge Kennelly had taken account of the absence of fast-track treatment in this District to impose a lesser sentence in his Medrano-Duran case. Then later in United States v. Sanchez-Gonzalez, 08 CR 609, Judge Kennelly, although he stated he would have done the same thing if he believed he had the discretion to do so, found himself bound by Martinez-Martinez to do otherwise. Sanchez-Gonzalez is now on appeal, with the defendant-appellant asserting the argument (among others) that in this Court's view makes the disparity involved truly unwarranted: the conferring of fast-track benefits on defendants in judicial districts that are flat-out indistinguishable from the Northern District of Illinois in terms of the very criteria that were used to justify the fast-track program to begin with.

In fairness to Gramillo, this Court cannot await the outcome

---

[2] [Footnote by this Court] According to the DOJ's most recent authorization memorandum, the District of Puerto Rico has now been placed within the fast-track program. Once again that scarcely inspires confidence in the DOJ's implementation of the concerns that motivated the fast-track program's adoption and continuation.

of the appeal in Sanchez-Gonzalez, for Gramillo has been in custody since mid-February and might thus end up serving more than what would otherwise be this Court's prescribed custodial sentence by the time Sanchez-Gonzalez has produced an opinion from our Court of Appeals. This memorandum opinion is accordingly being issued to explain why, without of course intending any disrespect, this Court does not view the pre-Kimbrough Seventh Circuit caselaw as necessarily controlling in Gramillo's case. During the forthcoming sentencing hearing this Court expects to hear from counsel from the parties on the subject that has been explored here as well as others, and it will certainly consider the possibility of granting Gramillo some aspect of the relief that his counsel has urged in his Sentencing Memorandum.

_____
Milton I. Shadur
Senior United States District Judge

Date:   June 3, 2009